1
2
3
4
5
6
7
8 **IN THE UNITED STATES DISTRICT COURT**
9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| STEPHANIE GARCIA, | ) Case No.: 1:10-cv-01997 JLT |
| | ) |
| Plaintiff, | ) ORDER DIRECTING THE ENTRY OF |
| | ) JUDGMENT IN FAVOR OF DEFENDANT |
| v. | ) MICHAEL J. ASTRUE, COMMISSIONER OF |
| | ) SOCIAL SECURITY, AND AGAINST |
| MICHAEL J. ASTRUE, | ) PLAINTIFF STEPHANIE GARCIA |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

17        Stephanie Garcia ("Plaintiff") asserts she is entitled to supplemental security income under

18 Title XVI of the Social Security Act.  Plaintiff argues the administrative law judge ("ALJ") had a

19 duty to develop the record and failed to properly assess her residual functional capacity.  Therefore,

20 Plaintiff seeks judicial review of the administrative decision denying her claim for benefits.  For the

21 reasons set forth below, the administrative decision is **AFFIRMED**.

22                                    **PROCEDURAL HISTORY**[1]

23        Plaintiff received supplemental security benefits based upon disability as a child.  AR at 14.

24 After Plaintiff turned 18, her eligibility for benefits was examined under the rules governing

25 disability in adults, and on February 29, 2008, the Social Security Administration ("the SSA")

26 determined Plaintiff should no longer receive benefits.  *Id.* at 49-51.  According to the SSA, Plaintiff

27

28        [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  was not entitled to benefits as an adult because her "condition should not limit [her] ability to work."

2  *Id.* at 49.  This decision was upheld on reconsideration when the SSA denied her claim on July 8,

3  2008.  *Id.* at 58-60.  After requesting a hearing, Plaintiff testified before an ALJ on April 8, 2010.  *Id.*

4  at 547.

5          The ALJ determined Plaintiff was not disabled under the Social Security Act as of February

6  1, 2008, and issued an order denying benefits on May 18, 2010.  AR at 14-21.  Plaintiff requested a

7  review by the Appeals Council of Social Security, which denied review of the ALJ's decision on

8  August 11, 2010.  *Id.* at 5-7.  Therefore, the ALJ's determination became the decision of the

9  Commissioner of Social Security ("Commissioner").

10                          **STANDARD OF REVIEW**

11          District courts have a limited scope of judicial review for disability claims after a decision by

12  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

13  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

14  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

15  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

16  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y*

17  *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

18          Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

19  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

20  389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

21  must be considered, as "[t]he court must consider both evidence that supports and evidence that

22  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

23                          **DISABILITY BENEFITS**

24          To qualify for supplemental security income under Title XVI of the Social Security Act,

25  Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically

26  determinable physical or mental impairment that has lasted or can be expected to last for a

27  continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be

28  considered to have a disability only if:

                                    2

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §416.920(a)-(f) (2011).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

**A.      Relevant Medical Evidence**

Dr. Mary McDonald completed a psychological evaluation on February 13, 2008.  AR at 422-28.  Dr. McDonald noted Plaintiff reported she had been depressed since she had a daughter with Down's Syndrome at the age of 15.  *Id.* at 422.  Plaintiff demonstrated "no signs of hallucinations or delusions" and "denied suicidal or homicidal ideation."  *Id.* at 423.  Dr. McDonald administered the following tests to Plaintiff: Bender Visual Motor Gestalt Test, II Edition; Wechsler Adult Intelligence Scale, III Edition; and Wechsler Memory Scale, III Edition.  *Id.*  However, Dr. McDonald noted, "Due to the constraints of time and the slowness with which [Plaintiff] worked, only the Performance section of the Wechsler Adult Intelligence Scale, III Edition, could be administered."  *Id.*  Plaintiff "obtained a Performance I.Q. of 77 which . . . clearly indicated that she

3

is functioning within the borderline range." *Id.*  Plaintiff "exhibited significant differences between memory that is verbal and memory that is visual." *Id.* at 424.  Dr. McDonald explained Plaintiff's "[v]erbal memory is impaired" and her "visual memory is within the low average range." *Id.* According to Dr. McDonald, "Overall, her performance was in the borderline range with is consistent with her tested intelligence." *Id.*  In addition, Dr. McDonald believed Plaintiff "[did] not present with marked psychological difficulties." *Id.*  Dr. McDonald opined the evaluation was "an accurate estimate of [Plaintiff's] current level of functioning." *Id.* at 423.

On February 25, 2008, Dr. Allen Middleton completed an assessment of Plaintiff's mental residual functional capacity and a psychiatric review technique.  AR at 429-42.  Dr. Middleton opined Plaintiff was "moderately limited" with her ability to understand, remember, and carry out detailed instructions." *Id.* at 429.  However, she was "not significantly limited" in all other areas of understanding and memory, concentration and persistence, social interaction, and adaptation.  *Id.* at 429-30.  In addition, Dr. Middleton opined Plaintiff had "mild" difficulties with activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  *Id.* at 440.  Dr. Middleton concluded Plaintiff was "able to understand and remember [work] locations [and] procedures of a simple, routine nature involving 1-2 step job tasks [and] instructions." *Id.* at 431.  In addition, Dr. Middleton opined Plaintiff was "able to relate to [and] accept direction from supervisors," as well as "able to remain socially appropriate [with] co-workers and the public [without] being distracted by them." *Id.*

Dr. Evangeline Murillo reviewed Plaintiff's medical records through April 2008 and completed an assessment of Plaintiff's mental residual functional capacity.  AR at 417-21.  Dr. Murillo opined Plaintiff was "moderately limited" in her ability to understand, remember, and carry out detailed instructions. *Id.* at 419.  Dr. Murillo concluded Plaintiff was:

A.    Able to understand and remember work locations and procedures of a simple, routine nature involving 1-2 step job tasks and instructions.

B.    Able to maintain concentration and attention for above in 2 hour increments. Would be able to sustain 8 hr/40 hr work schedules on a sustained basis.

C.    Able to relate to and accept direction from supervisors.  Would be able to remain socially appropriate with co-workers and public without being distracted by them.

4

D.      Able to travel, avoid workplace hazards, respond to change and set realistic goals
        independently.

*Id.* at 421.  In addition, Dr. Murillo completed a psychiatric review technique on May 20, 2008, and opined Plaintiff had "mild" restriction of activities of daily living and no difficulties with social functioning and maintaining concentration, persistence, or pace.  *Id.* at 470. Dr. Murillo indicated she agreed with the assessment that Plaintiff "[a]ppears capable of [simple routine tasks]."  *Id.* at 418.

**B.      Hearing Testimony**

   *1.      Plaintiff*

Plaintiff testified at the hearing before the ALJ on April 8, 2010.  AR at 547.  Plaintiff reported she took in a "Special Education" class and graduated high school.  *Id.* at 550, 553. Plaintiff stated she did not take classes after high school, either in college or a training program.  *Id.* at 553.

Plaintiff stated she was involved with an independent living program, through which she had a counselor who worked with her 25 hours a month.  AR at 552, 563.  Plaintiff reported she had been in the program for three years.  *Id.* at 552.  Plaintiff said her counselor worked with her to take the driving test, shop, pay bills, cook, clean, and make doctor appointments.  *Id.* at 561-62.  In addition, Plaintiff said she was involved with the Central Valley Regional Center, which helped put her in touch with other assistance for her disability such as the independent living program.  *Id.* at 564.

According to Plaintiff, she worked part-time for Little Caesar's for two or three months in 2008.  AR at 557.  Plaintiff said she "had trouble" in the position because a supervisor watched her make the pizzas, and sometimes she "wouldn't do it right."  *Id.* at 588.  Plaintiff said she had difficult whether it was the same kind of pizza she made before, or if it was a totally different kind of pizza.  *Id.*  She reported she had difficulty also with writing down the orders and counting the money for the cash register.  *Id.* at 559.  Plaintiff said she quit the job because "[i]t was too hard."  *Id.*

Plaintiff stated she last worked in a program with the Department of Rehabilitation in 2009. AR at 553.  She reported that she worked "four or five hours" a day, Monday through Friday, and her responsibilities included copying papers, and alphabetizing files in an office.  *Id.* at 553-54, 56. Plaintiff said this job was not an assisted program, and she did not have either a job coach or extra

supervision.  *Id.* at 555.  Plaintiff believed the work "was too hard," and said she "had trouble doing the work," so she quit the job after two months.  *Id.* at 555-56.

Plaintiff believed she was unable to do any job eight hours a day, five days a week without someone to help her because it would be hard, and she had difficulty understanding and remembering instructions, and she was unable to read, write, or do math.  AR at 560.  Plaintiff said she was able to read short words, such as a stop sign, but was unable to read the names of streets "because they're long."  *Id.* at 562.  Plaintiff estimated she could concentrate "maybe five minutes," after which she would "get frustrated and then . . . get mad" and stop trying to read.  *Id.* at 565.

In addition to her learning disability, Plaintiff said she suffered from depression.  AR at 560-61.  Plaintiff believed her depression was caused by her disability, and her daughter having many health issues, including Down Syndrome, asthma, and problems with her heart and thyroid.  *Id.* at 568-69.  Plaintiff said she felt depressed two or three times a week, and that it affected her ability to do things such as taking care of her daughter.  *Id.* at 566.  Plaintiff stated she was taking medication for her depression, and it helped her feel "a little bit less depressed."  *Id.* at 566-67.  When depressed, Plaintiff reported she would start to cry and she "sometimes" had suicidal thoughts.  *Id.* at 568.  Plaintiff said she did not have any hobbies or interests that made her happy when she felt depressed.  *Id.* at 570.

*Third-Party Witness*

Vicky Medina, a counselor at Central Valley Regional Center ("CVRC"), testified after Plaintiff at the hearing.  AR at 571.  Ms. Medina reported she had a Bachelor of Arts in Social Work, and had worked with Plaintiff "about four years."  *Id.*  According to Ms. Medina, she had referred Plaintiff to the Department of Rehabilitation and CVRC was paying for the independent living program services.  *Id.* at 572.  Ms. Medina stated Plaintiff was in the independent living program "because she needs assistance with . . . trying to find employment, filling out job applications, . . . learn[ing] how to cook meals, also trying to get her driver's license."  *Id.*  In addition, Ms. Medina said the Department of Rehabilitation assisted Plaintiff with job applications and trying to find employment with supervision.  *Id.* at 572.  Ms. Medina explained that positions obtained through the

6

1    Department of Rehabilitation have "a little more direct supervision" compared to other jobs. *Id.* at

2    573.

3          Ms. Medina believed she was aware of Plaintiff's skill level, and opined Plaintiff was not

4    able to perform work without extra supervision because Plaintiff "always had difficulty with memory

5    retention and she's more of a visual learner." AR at 573. Ms. Medina explained Plaintiff did not

6    remember directions if just told, but Plaintiff learned with demonstration and repetition. *Id.* at 573-

7    74. According to Ms. Medina, Plaintiff needed to be shown tasks more than one day "because she

8    might not remember it now that another day has passed." *Id.* at 574. In addition, Ms. Medina opined

9    Plaintiff required supervision to be sure she understood directions. *Id.*

10         *Vocational Expert*

11         Vocational Expert ("VE") Thomas Dachelet testified also at the hearing before the ALJ. The

12   VE observed Plaintiff's past work "was all assisted," and therefore was not perfumed "as normally

13   found in the national economy." AR at 578. Assuming the work was not supervised, the VE

14   characterized work at Little Caesar's as "[f]ast food and light unskilled." *Id.* at 579.

15         The ALJ asked the VE to consider an individual the same age and with the same educational

16   background and work history as Plaintiff. AR at 579. Specifically, the person was "limited to

17   simple and repetitive tasks with a job learned mostly by demonstration," and could not have "reading

18   and writing as a job task." *Id.* The VE opined "the full world of unskilled and grids would apply."

19   *Id.* at 580.

20         The VE observed workers "are required to read and write in order to be identified in any one

21   of the jobs," but "the jobs [Plaintiff] did for example at light unskilled, she didn't read or write." AR

22   at 580. As examples of light, unskilled work, the VE identified the following jobs: bagger (920.687-

23   018), garment sorter (222.687-014), and grader (529.665-010). *Id.* at 581-82. Also, the VE testified

24   "there were 1,020,830 persons employed at the light unskilled level." *Id.* at 582. If an individual

25   required supervision while working, the VE opined there would not be jobs "as normally found or

26   where work's closed." *Id.* at 584.

27   ///

28   ///

7

C.      **The ALJ's Findings**

As an initial matter, the ALJ observed Plaintiff "was notified that she was found no longer disabled as of February 1, 2008, based on a redetermination of disability under the rules for adults who file new applications" for disability benefits.  AR at 16.  Using the five-step process, the ALJ determined Plaintiff's "borderline intellectual functioning" was a severe impairment, which she had since February 1, 2008.  *Id.* This impairment did not meet or medically equal one of the listed impairments, including Listing 12.05.  *Id.* at 16-17.

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple repetitive tasks where the jobs can be learned mostly by demonstration, but she cannot perform reading and/or writing as a job task."  AR at 17.  Plaintiff did not have past relevant work, and transferability of job skills was not an issue.  *Id.* at 20.  However, the ALJ found "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  *Id.* Therefore, the ALJ concluded Plaintiff was not a disabled adult as defined by the Social Security Act.  *Id.* at 20-21.

## DISCUSSION AND ANALYSIS

A.      **A duty to develop the record was not triggered.**

The law is well-established in this Circuit that the ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  However, the law imposes a duty on the ALJ to develop the record in only some circumstances.  20 C.F.R. § 404.1512(d)-(f) (recognizing a duty on the agency to develop medical history, re-contact medical sources, and arrange a consultative examination if the evidence received is inadequate for a disability determination).  The duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1512(e), 416.912(e).  As a result, the ALJ is required to seek additional information "when a report . . . contains a conflict or ambiguity that must be resolved" prior to the disability determination.  20 C.F.R. § 416.912(e)(1).

Plaintiff argues the ALJ "failed to carry out her duty to fully and fairly develop the record in accepting the deficient and incomplete psychological examination of Dr. McDonald." (Doc. 15 at 15). Plaintiff notes, "Dr. McDonald performed only one-half of the WAIS-III IQ test and only scored a third of it." *Id.* at 17. According to Plaintiff, "The failure of Dr. McDonald to perform the full WAIS-III testing results is an incomplete consultative examination that did not contain the results of tests performed according to the requirements stated in the Listing of Impairments." *Id.* at 18 (citing 20 C.F.R. §§ 404.1519n(c)(4), 416.919n(c)(4)). Plaintiff argues, "Had Dr. McDonald completed the WAIS-III testing it is at least probable, if not logically probable, that the large disparity between the auditory and visual scores in the WMS-III may have been mirrored by the verbal and performance scores in the WAIS-III." *Id.* Further, Plaintiff contends this is not the first time Dr. McDonald failed to complete IQ testing due to time constraints, and "the worry here is that the ALJ failed to fully and fairly develop the record by not requesting that Dr. McDonald complete the testing." *Id.* at 19 (citing *Andrade v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 29120 (E.D. Cal. Mar. 9, 2011)).

On the other hand, Defendant argues, "Plaintiff fails to cite to pertinent Ninth Circuit caselaw regarding the duty to develop the record." (Doc. 18 at 6-7). According to Defendant, "Here, the medical evidence provided by Dr. McDonald was not ambiguous; rather, it—along with the other evidence of record—simply failed to show that Plaintiff was as limited as she claimed." *Id.* at 7. Further, Defendant contends, "Plaintiff's hypothesizing that additional testing may have given different results does not mean that the exam results were inadequate or ambiguous." *Id.* Therefore, Defendant argues the ALJ did not have a duty to further develop the record. *Id.* Defendant notes that in *Andrade*, the Court found administration of only Performance IQ was sufficient: "Dr. McDonald's 'report allowed for a proper evaluation of the evidence, and thus ALJ Kopicki had no duty to develop the record further.'" *Id.* (quoting *Andrade*, 2011 U.S. Dist. LEXIS 29120 at *23).

Here, the case presents similar facts to those in *Andrade*. In both cases, Dr. McDonald scored the Performance IQ, which was relied upon by the ALJ, and the claimants—represented by the same counsel—argued the Performance IQ alone was insufficient. In *Andrade*, the Court observed, "Dr. McDonald's report does not reflect the length, or brevity for that matter, of her

1    examination of Plaintiff.  [Citation].  Thus, it is pure speculation to assert that it appears that the only

2    time constraint was Dr. Mc Donald imposing a maximum appointment time."  *Andrade*, 2011 U.S.

3    Dist. LEXIS 29120 at *22 (internal citation and quotation marks omitted).  The Court found the

4    claimant failed to demonstrate that further testing would affect the ALJ's determination that he was

5    capable of performing "unskilled work with a restriction to simple, repetitive work."  *Id.* at *25.

6    Further, the Court determined "the record evidence is more than sufficient to allow the ALJ to

7    conclude that Plaintiff's borderline intellectual functioning does not preclude him from work." *Id.*

8    Consequently, the Court concluded the ALJ "did not err by failing to develop the record by re-

9    contacting Dr. McDonald."  *Id.*

10           Plaintiff argues the matter before the Court must be distinguished because she had previous

11   IQ scores below 70 and, "[u]nlike *Andrade*, the failure of Dr. McDonald to administer all of the

12   testing is material and prejudicial."  (Doc. 15 at 20).  According to Plaintiff, "Had [she] been given

13   the complete WAIS-III test, and had she scored below 70 on any of the two remaining two scores,

14   the ALJ's decision would [have] changed."  *Id.*  Plaintiff argues that "a valid IQ score on one of the

15   two missing IQ tests may provide satisfaction of the Appendix 1, Listing 12.05(C) or (D)."  *Id.*

16   However, this assertion is speculation on the part of Plaintiff and lacks evidentiary support in the

17   record.  Moreover, the ALJ acknowledged Plaintiff had IQ scores between 60 and 70 in 2004, but

18   opined "even assuming that these scores are a valid measurement of the claimant's current IQ, *there

19   is no other disability to qualify for listing 12.05*."[2]  AR at 18, n.1 (emphasis added).

20

21   _____

22        [2] Where a claimant does not present evidence that she is dependent on others for personal needs (such as eating,
     dressing, or bathing) and has an IQ above 59, Listing 12.05 requires more than a low IQ score.  With an IQ between 60 and

23   70, paragraph "C" requires a claimant to demonstrate an additional physical or mental impairment that imposes "an additional
     and significant work-related limitation of function," and paragraph "D" requires a claimant to demonstrate at least two of the

24   following:
              1. Marked restriction of activities of daily living; or

25            2. Marked difficulties in maintaining social functioning; or
              3. Marked difficulties in maintaining concentration, persistence, or pace; or

26            4. Repeated episodes of decompensation, each of extended duration.
     20 C.F.R. Pt. 404, Subpt. P, App. 1: 12.00.  However, the ALJ determined Plaintiff's *only* severe impairment was her

27   borderline intellectual functioning, and she did not have another impairment to satisfy the requirements of paragraph C.  AR
     at 17.  Likewise, Plaintiff was unable to demonstrate she satisfied the requirements of paragraph "D," because the ALJ found

28   she had "mild restrictions of activities of daily living; no difficulties in maintaining social functioning; and moderate
     difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation."  *Id.*

1    Significantly, the Regulations anticipate cases in which the claimant has only one IQ score,

2  because the Regulations provide where more than one IQ score is obtained, the lowest is used in

3  conjunction with the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1: 12.00 "Mental Disorders."

4  Although the Regulations note "more than one IQ is customarily derived" from the Wechsler tests,

5  there is no requirement that each test result include a verbal, performance, and full scale IQ. *See id.*

6  The Regulations provide, "*results of intelligence tests are only part of the overall assessment*, [and]

7  the narrative report that accompanies the test results should comment on whether the IQ scores are

8  considered valid and consistent with the developmental history and the degree of functional

9  limitation." *Id.* (emphasis added). Here, Dr. McDonald provided a narrative report in which she

10  found the evaluation was valid, and "an accurate estimate of [Plaintiff]s current level of

11  functioning." AR at 423. In addition, Dr. McDonald observed Plaintiff "exhibited significant

12  differences between memory that is verbal and memory that is visual," but opined "her performance

13  was in the borderline range with is consistent with her tested intelligence." *Id.* at 424. Given that Dr.

14  McDonald determined a valid Performance IQ and provided a narrative report as required by the

15  Regulations, Plaintiff's contention that the psychosocial examination was "incomplete" must fail.

16    Plaintiff has not demonstrated there were conflicts or ambiguities to be resolved, and the ALJ

17  did not find Dr. McDonald's record was insufficient to make a disability determination. Further, as

18  in *Andrade*, Plaintiff has not demonstrated further testing would affect the ALJ's determination. The

19  IQ score and narrative report by Dr. McDonald was not "inadequate or incomplete," such that the

20  ALJ was required to contact her for more information. *See* 20 C.F.R. § 416.919p(b). Consequently,

21  no duty to develop the record was triggered. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

22  2002); *Mayes*, 276 F.3d at 459-60.

23  **B.    The RFC determination is supported by substantial evidence in the record.**

24    Plaintiff contends the finding of that Plaintiff is able to perform "simple repetitive tasks" fails

25  to adequately recognize the distinction between "simple tasks" and "one-to-two step job tasks."

26  (Doc. 15 at 19). According to Plaintiff, while the ALJ recognized the assessment that Plaintiff

27  "could perform simple one-and two-step tasks," the ALJ failed to adopt these limitations in the RFC.

28  *Id.* at 21-22. Consequently, Plaintiff argues "the ALJ implicitly rejects the opinions" of Dr.

Middleton and Dr. Murillo and ALJ failed to properly assess Plaintiff's residual functional capacity. *Id.*

On the other hand, Defendant argues the ALJ adopted the opinions of Dr. Middleton and Dr. Murillo, and the ALJ "stated that they were given 'great weight' because they were consistent with the overall evidence, including the findings of Dr. McDonald." (Doc. 18 at 8). Defendant notes, "In one instance, Dr. Murillo opined that Plaintiff could perform simple routine tasks (SRT) without any additional qualifiers." *Id.* (citing AR at 418). According to Defendant, "The ALJ properly translated these opinions into the concrete work limitations set forth in the RFC." *Id.* Further, Defendant asserts that any "error in not including the words '1-2 step job tasks and instructions' in the RFC . . . is harmless," because a job identified by the vocational expert requires only 1-2 step tasks. *Id.* at 9.

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians, (2) examining physicians, who examine but do not treat the claimant, and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d. 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2). Thus, the courts apply a hierarchy of deference to medical opinions based upon the nature of services provided by the physician. Here, there is no treating physician who offered a medical opinion. As a result, the opinion of Dr. McDonald, an examining physician, is entitled to the greatest weight, and the opinions of Dr. Middleton and Dr. Murill, non-examining physicians, are entitled to less weight.

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Moreover, an "ALJ

12

is entitled to choose between differing medical opinions of equal weight.  Indeed, that is the ALJ's

function." *Williams v. Astrue*, 2010 U.S. Dist. LEXIS 93511, at *16 (N.D. Cal. Sept. 8, 2010)

(where the opinions of two examining physician opinions were in direct conflict), citing *Andrews v.*

*Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995).

   In this case, the ALJ considered the evidence presented by Dr. McDonald, Dr. Middleton, and

Dr. Murillo in conjunction with the testimony of Plaintiff's counselor at Central Valley Regional

Center.  Dr. McDonald observed Plaintiff "exhibited significant differences between memory that is

verbal and memory that is visual," but "did not present with marked psychological difficulties," and

her GAF score of 70 indicated she was "generally functioning pretty well."  AR at 18, 423.  Upon

reviewing the medical records, Dr. Middleton opined Plaintiff had "mild" difficulties with

concentration, persistence, or pace; while Dr. Murillo opined she had no difficulties with

concentration, persistence, or pace, and appeared capable of simple routine tasks.   *Compare* AR at

440 *with* AR at 418, 470.  Further, the ALJ noted Plaintiff's counselor observed she "learns by

repetition," and her school records demonstrated "she could follow multi-step directions and

complete tasks independently."  *Id.* at 19.  Construing the medical evidence with the testimony of

Plaintiff's counselor and her school records, the ALJ determined Plaintiff was able to perform simple

repetitive tasks.

   Significantly, Dr. Middleton and Dr. Murillo did not *limit* Plaintiff to "one and two step job

instructions."  Recently, when an ALJ interpreted an ability to carry out one and two-step

instructions into an RFC limiting the claimant to "simple, routine work," this Court explained:

> The ALJ was entitled to interpret [the doctor's] findings to formulate his RFC, and he
> was not required to adopt the exact language used by [the doctor].  This is so because
> [the doctor's] finding regarding tasks with one-to two-step instructions was not phrased
> as a limitation, but rather an affirmative statement of what Plaintiff could do.  The actual
> limitation [the doctor] found was one for jobs involving tasks with complex and
> technical instructions…. Here, the ALJ's RFC for simple, routine work was a rational
> interpretation of [the doctor's] findings, and thus it must be upheld.

*Salas v. Astrue*, 2011 U.S. Dist. LEXIS 69620 at *21 (E.D. Cal. June 29, 2011); *compare also*

*Navarro v. Astrue*, 2010 U.S. Dist. LEXIS 133685 (C.D. Cal. Dec. 16, 2010) (the physician *limited*

the claimant to one- and two-step tasks, and the RFC for "simple work" did not encompass the

limitation) *with Wilson v. Astrue*, 2010 U.S. Dist. LEXIS 105658 (C.D. Cal. Oct. 1, 2010) (the

1   physician opined the claimant could follow one and two-step instructions, which was not an actual

2   limitation to *only* one and two-step instructions, and therefore consistent with an RFC limiting the

3   claimant to "simple, repetitive tasks").  Therefore, the opinions of Dr. Middleton and Dr. Murillo

4   that Plaintiff was "[a]ble to understand and remember . . . procedures of a simple routine nature

5   involving 1-2 step job tasks and instructions" were consistent with the RFC set forth by the ALJ that

6   Plaintiff could perform simple repetitive tasks.  Moreover, the opinions of the non-examining

7   physicians are substantial evidence supporting the ALJ's conclusion.  *See Andrews v. Shalala*, 53

8   F.3d 1035, 1042 (9th Cir. 1995) ("reports of the nonexamining advisor . . . may serve as substantial

9   evidence when they are supported by other evidence in the record and are consistent with it").

10                                          **CONCLUSION**

11          For these reasons, the ALJ's disability determination was based upon proper legal standards

12   and supported by substantial evidence in the record.  Dr. McDonald's narrative report and scoring of

13   the Performance IQ was sufficient under the Regulations, and the ALJ did not have a duty to develop

14   the record.  Further, the ALJ properly interpreted the evidence, including the opinions of Dr.

15   Middleton and Dr. Murillo, to determine Plaintiff had the ability to perform "simple repetitive tasks

16   where the jobs can be learned mostly by demonstration."  Therefore, the ALJ's determination of the

17   evidence must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the

18   evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must

19   be upheld.").  Further, the medical opinions support the RFC set forth by the ALJ in his

20   determination that Plaintiff was not disabled as defined by the Social Security Act.

21          Accordingly, **IT IS HEREBY ORDERED**:

22          1.      The administrative decision of the Commissioner of Social Security denying benefits

23                  is **AFFIRMED**; and

24          2.      The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant

25                  Michael J. Astrue, Commissioner of Social Security, and against Plaintiff

26                  Stephanie Garcia.

27   IT IS SO ORDERED.

28   Dated:   **February 17, 2012**                              **/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE